[No. 30638. Department Two. December 9, 1948.]

*In the Matter of the Estate of* AUGUST WIND, *Deceased.*
SAIMA WIND, *Respondent and Cross-appellant,* v.
ALFRED HENDRICKSON, *as Administrator, Appellant.*[1]

[1]Reported in 200 P. (2d) 748.

*W. A. Ackerman* and *Lester T. Parker,* for appellant.

*Warner Poyhonen* and *Lester Stritmatter,* for respondent and cross-appellant.

SCHWELLENBACH, J.—This is an appeal from a judgment awarding a family allowance to the surviving spouse, and a cross-appeal by her from a judgment denying an award in lieu of homestead.

August Wind died February 13, 1945, leaving estate in Pacific county. Saima Wind had obtained an interlocutory order of divorce from him January 10, 1945. Under a property settlement agreement, she was given furniture valued at five hundred dollars; postal savings certificates, twenty-five hundred dollars; savings account, five hundred dollars, and cash, eleven hundred dollars. On the day that the interlocutory order was entered, Wind willed all of his property (which was his separate property) to Alfred Hendrickson, to hold for his brother in Finland, Kalle Winni.

On the day of his death, Mrs. Wind petitioned the court to be appointed administratrix of the estate, and she was so appointed February 28, 1945. She thereafter had property of the estate set aside to her in lieu of homestead. Later, Alfred Hendrickson filed two petitions, one attacking the probate proceedings, alleging that August Wind had disposed of his property by will, and the other, moving to vacate the judgment setting aside property to her in lieu of homestead. The trial court entered judgment, refusing to admit the will, holding that, before Wind's death, the will was destroyed at the request of the testator. Upon appeal to this court, we reversed the judgment, holding

that the will was fraudulently destroyed by Mrs. Wind. *In re Wind's Estate*, 27 Wn. (2d) 421, 178 P. (2d) 731. We said:

"The evidence was sufficient to prove that the will was properly and legally executed; and that it was never revoked by Mr. Wind, but was fraudulently destroyed by Mrs. Wind. It was fraudulently destroyed because the destruction was unlawful and done to further the financial interests of respondent. We hold that the evidence was sufficient to prove a will, and that it must be admitted to probate."

This proceeding arose upon two petitions filed by Mrs. Wind in October, 1947; one, to set aside property to her in lieu of homestead, and the other, for a family allowance. Upon a hearing, the trial court denied the petition to set aside in lieu of homestead, but entered judgment awarding her a family allowance of seventy-five dollars per month, with certain deductions, commencing on the first day of the month following August Wind's death, and continuing until the close of the administration of the estate. This appeal follows.

Paragraph No. 7 of the judgment is as follows:

"That the necessary living expenses of Saima S. Wind, since the death of her husband, August W. Wind, have amounted to not less than $75.00 per month; that as his surviving wife she is entitled to a family allowance out of said estate, and that the sum of $75.00 per month should be awarded to her as a family allowance, commencing on the first day of the month following the death of August W. Wind, and continuing until the close of the administration of his estate, which amounts the administrator should be required to pay in preference to all other charges except expenses of administration; that the estate should be given credit on said family allowances for the sum of $2177.51, being the net proceeds from operation of the hotel property, actually received by Saima S. Wind from February 13, 1945, to August 14, 1947, and further that the estate should be given credit for the sum of $1050.00 received by Saima S. Wind as a family allowance under the former order of the Court from March 1, 1945 to April 30, 1946 which order was later revoked, and that she should be given credit for said $1050.00 upon the judgment entered herein on August 11, 1947."

Paragraph No. 9 is as follows:

"The Court is of the opinion that the conduct of said Saima S. Wind had not been intentionally fraudulent herein since she acted on advice of counsel in seeking probate of said estate; that following the death of her husband she proceeded to administer his estate; that proceedings were instituted on behalf of August W. Wind's brother, Kalle Winni, in Finland, to establish a will of August W. Wind alleged to have been destroyed, and that on the request of said Kalle Winni and his representatives a number of delays occurred; that in December, 1945, said petition for the probate of the alleged will was withdrawn and resignation of Alfred Hendrickson filed herein, and that for a period of some weeks there was no contest as to Saima S. Wind's right to administer said estate";

■ August Wind having died before the entry of the final decree of divorce, the interlocutory order of January 10, 1945, in its entirety, became a nullity. *State ex rel. Atkins v. Superior Court,* 1 Wn. (2d) 677, 97 P. (2d) 139; *Dougherty v. Dougherty,* 24 Wn. (2d) 811, 167 P. (2d) 467. Respondent became his widow, entitled to such an award as the statute provides. *In re Chisholm's Estate,* 159 Wash. 674, 294 Pac. 973, 76 A. L. R. 279.

■ The statutes in effect at the time of Mr. Wind's death were Rem. Rev. Stat., §§ 1473 and 1474 [P.P.C. § 205-1, -3]. Thereunder, respondent would be entitled to an award of three thousand dollars, "Provided, that the awards in this and the next preceding section [§ 1473] provided for, shall not be taken from separate property of the deceased, which is otherwise disposed of by will." All of the property of the estate is separate property of decedent, and the entire estate passed under his will to his brother. The award, therefore, was properly denied.

Respondent contends, however, that she is entitled to an award under Rem. Supp. 1945, § 1473, which went into effect four months after decedent's death and was the statute in force at the time the petition was filed. The 1945 amendment omitted the exemption, found in the former statute, of separate property of decedent otherwise disposed of by will.

■■ That a statute will be construed as having a prospective operation only, unless it is plainly indicated that it shall operate retrospectively, is so well settled that it needs no citation. The 1945 amendment contains nothing to indicate that its operation was to be retrospective. On the contrary, it contains the provision that "Under this section the Court shall not award more property than could be awarded under the law in effect at the time of the death of the deceased spouse."

Appellant's first assignment of error deals with the granting of a family allowance to respondent widow, under Rem. Rev. Stat., § 1476 [P.P.C. § 205-7], which provides:

"In addition to the awards herein provided for, the court may make such further reasonable allowance of cash out of the estate as may be necessary for the maintenance of the family according to their circumstances, during the progress of the settlement of the estate, and any such allowance shall be paid by the executor or administrator in preference to all other charges, except funeral charges, expenses of last sickness and expenses of administration."

■ An award in lieu of homestead is a matter of right (*In re Small's Estate*, 27 Wn. (2d) 677, 179 P. (2d) 505) while an allowance for family maintenance under Rem. Rev. Stat., § 1476, is a matter of discretion. *State ex rel. Case v. Superior Court*, 23 Wn. (2d) 250, 160 P. (2d) 606.

■ Referring to the above statute, we said, in *In re Hilleware's Estate*, 159 Wash. 580, 294 Pac. 230:

"Our holdings have been that statutes of this sort rest in a sound public policy and should be liberally construed for the purpose of effecting the object intended. *In re Hooper's Estate*, 117 Wash. 463, 201 Pac. 740. The cited case also holds that a widow, although she may have no children or other dependents, constitutes a 'family,' within the meaning of the statute. As to the rule of construction to be applied to the statute, our later cases are to the same effect. *In re Andrew's Estate*, 123 Wash. 546, 212 Pac. 1073; *In re Van Duyn's Estate*, 129 Wash. 528, 225 Pac. 446; *In re Behre's Estate*, 130 Wash. 458, 227 Pac. 859."

See, also, *In re Pugh's Estate*, 22 Wn. (2d) 83, 154 P. (2d) 308.

· Let us examine the situation in the light that "statutes of this sort rest in a sound public policy and should be liberally construed for the purpose of effecting the object intended."

On January 10, 1945, the day respondent obtained the interlocutory order of divorce, she and her husband entered into a property settlement. She received forty-six hundred dollars. She testified:

"Q. Do you remember whether you had these certificates when your husband was sick in the hospital in Tacoma? A. Why you want that because I use that money, that is mine and I used it. Q. I want you to tell me what became of that money. A. That is my own money. Q. I want you to tell me what became of it. A. That is my own business. Q. Is that the reason you are answering the way you do? A. That is my own money."

She testified that she had spent all of the money she received in the settlement, and also one thousand fifty dollars she had been awarded as a family allowance. Furthermore, she fraudulently destroyed August Wind's will, thereby gaining possession of the entire estate, and operated the hotel from February 28, 1945, to August 14, 1947. As a result of her fraud, the affairs of the estate have been twice before this court, and the progress of the settlement of the estate has continued from February 28, 1945, to the present time and will continue for some time more.

██ True, under our holdings, she could come within the definition of the "family." She insists upon being recognized as the "family" for the purpose of obtaining the family allowance under the statute. But when she is questioned as to the money which she received as a property settlement when, but for the death of Mr. Wind, the family status ended, she brushes that aside by saying that that is her own money and its disposition is her own business. She is the "family" for one purpose, and her own free agent for another purpose.

There is no question but that a situation could arise where a surviving spouse who had obtained an interlocutory order, but no final decree before the death of her husband, could obtain an award for a family allowance under Rem. Rev. Stat., § 1476. The statute should be liberally construed

to effect the object intended. But liberal construction should only be applied by the courts for the purpose of carrying out the beneficent purposes intended in the legislative enactment. We cannot believe that the legislature, in enacting the statute, intended it to apply to a situation such as this, where the respondent would be permitted to mulct the estate by continually keeping it in litigation, and thus prolonging the progress of the settlement of the estate. It would be against a sound public policy to construe the statute in such a manner.

Respondent, by her actions, is precluded from seeking relief as the "family." Furthermore, by her delaying tactics, she attempted to postpone the closing of the estate, in order to receive payments under the family allowance. She was not one of the persons whom the legislature intended to protect by the enactment of Rem. Rev. Stat., § 1476. Under the circumstances of this case, it was an abuse of discretion to award a family allowance to respondent. In justice to the trial court, we are convinced, from the record, that it was of the opinion that she was entitled to the award as a matter of right.

Respondent also assigns error to the awarding of a judgment of $2,177.51 against Mrs. Wind for hotel rents collected as administratrix and not accounted for to the present administrator.

On August 11, 1947, an order was entered upon the final account and petition for discharge of Mrs. Wind as administratrix. That order is *res judicata* of all matters covered therein and of all questions that should have been raised at the hearing upon the final account. *In re Marsh's Estate*, 18 Wn. (2d) 308, 139 P. 284; *Bostock v. Brown*, 198 Wash. 288, 88 P. (2d) 445. The operation of the hotel by Mrs. Wind was done as administratrix, and any matters pertaining thereto should have been raised at the hearing upon her final account.

Respondent pleaded *res judicata* in her answer to appellant's cross-complaint, and the trial court was properly of the opinion that such matters were settled by the final

account, but received evidence thereof, and awarded judgment upon a stipulation of counsel as to the amount. The stipulation was entered into merely for the purpose of expediency and not as an admission that such sum was due and owing to the administrator. The judgment was therefore erroneous.

The trial court properly denied recovery upon the other matters alleged in appellant's cross-complaint, and we deem it unnecessary to discuss them.

■■■ Costs were denied in the court below on the ground that both parties had prevailed in part and lost in part. The same is true upon this appeal, and neither party will be allowed costs in this court.

. That part of the judgment denying the award in lieu of homestead is affirmed; that part granting a family allowance is reversed; that part granting judgment for hotel rents collected is reversed.

MALLERY, C. J., ROBINSON, SIMPSON, and HILL, JJ., concur.